JAMES S. MORSELL, JR., AND NATHANIEL DUKE, NEXT FRIEND
OF SARAH B. D. MORSELL vs. JOHN J. OGDEN, NEXT
FRIEND OF ELIZABETH R. MORSELL.

LAST WILL AND TESTAMENT, UNEXECUTED, WHEN NOT TO BE ADMITTED TO
PROBATE.—E. M. having caused to be prepared in writing her last will and
testament, declared herself fully satisfied therewith, but failed to execute the
same for nearly one year thereafter, when, desiring to execute it, but not
being able to find it, she directed her brother Q. A. M. to have a second
will prepared similar to the first. A second will was prepared, but E. M. died
without having executed it. The second will having been offered for probate,
a caveat was filed thereto the same day. It was proved by the attorney
who prepared both of said wills that the second was in substance the same
as the first; but it appeared that it was never in her possession; that she
neither read it nor heard it read; that she made no inquiry in reference to
it during her last illness, and there was no evidence to show that the
deceased was unavoidably prevented from executing it, or that she intended
it to have effect in its imperfect state. On appeal from an order of the
Orphan's Court admitting the second will to probate, HELD :

That the state of the evidence leaves it in doubt whether the "*animus
testandi*" manifested at one time by the deceased continued with her to the
time of her decease, or during her testamentary capacity, after the prepara-
tion of the paper, and that the Orphans' Court was in error in admitting
the proposed will to probate.

APPEAL from the Orphans' Court of Calvert County.

This is an appeal from an order of the Orphans' Court
of Calvert County, admitting to probate an unexecuted
writing, purporting to be the last will and testament of
Eliza Morsell, deceased.

The facts of the case are stated in the opinion of this
Court.

The cause was argued before BOWIE, C. J., and BARTOL,
GOLDSBOROUGH, COCHRAN and WEISEL, J.

*C. S. Parran* and *D. R. Magruder* for the appellants.

The appellants contend that the Orphans' Court erred in admitting this unexecuted paper to probate, because :

1st. The paper being unexecuted there is no evidence to show that the deceased was unavoidably prevented from executing it, or that she intended it to have effect in its unfinished state. *Boofter vs. Rogers,* 9 *Gill,* 53. *Plater vs. Groom,* 3 *Md. Rep.,* 142. *Barnes vs. Syester,* 14 *Md. Rep.,* 527. *Modern Probate of Wills,* 56. *Weems vs. Weems,* 19 *Md. Rep.,* 343. *Tilghman vs. Steuart,* 4 *H. & J.,* 156. *Brown vs. Tilden,* 5 *H. & J.,* 371.

2nd. The will purports to dispose of both real and personal estate, and being known to the decased to be incomplete as to the one, it cannot be supposed to have been intended to operate as to the other. *Plater vs. Groom,* 3 *Md. Rep.,* 142. *Tilghman vs. Steuart,* 4 *H. & J.,* 173.

3rd. The paper propounded for probate was never seen by the deceased, and the purport of the instructions given by her for the preparation of her will is not clearly shown ; and it does not appear that ordinary efforts were made by the deceased to have the paper procured and executed, though she had ample opportunity of doing so.

4th. It is not shown that the paper offered for probate conforms to the instructions given by the deceased, or that her intentions as to the disposition of her property are clearly expressed therein.

5th. The instructions given by the deceased amounted to nothing more than a mere project for a will, never considered by the deceased as finally settled or concluded.

*Henry Williams* and *A. B. Hagner* for the appellee.

It is insisted by the appellee that the ruling of the Orphans' Court should be sustained upon the principle decided in the cases of *Weems vs. Weems,* 19 *Md. Rep.,* 334. *Brown vs. Tilden,* 5 *H. & J.,* 371. *Visitors, &c.,*

Morsell et al. *vs.* Ogden et al.

*vs. Bruce,* 1 *H. & McH.,* 509. *Boofter vs. Rogers,* 9 *Gill,* 53.

GOLDSBOROUGH, J., delivered the opinion of this Court.

The appeal in this case is taken from a decree of the Orphans' Court of Calvert County, by which the paper writing set out in the record, marked A, and purporting to be the last will and testament of Eliza Morsell, was admitted to probate.

The objections urged by the caveators to the admission of this paper writing to probate are, that it "was not executed by Eliza Morsell in her life time in due form of law, as and for her last will and testament, nor by her intended and declared as and for her last will and testament."

The caveatee, by his answer, does not deny the allegation of the caveators as to the non-execution of the paper writing, but says "that the said paper was intended as and for her last will and testament by said Eliza Morsell, and that the same is sufficient to convey the personal property of the said deceased."

The provisions of the paper writing, marked A, are very brief, and may be concisely stated:

The testatrix gives and devises to her brother, Quincy A. Morsell, certain enumerated slaves, together with all her property, real, personal and mixed, of which she might die seized and possessed, or in any way entitled to, during his natural life, in trust for the separate use of her niece, Elizabeth R. Morsell, daughter of said Quincy A. Morsell, he to have the management and control thereof, and to appropriate the income from the property towards the education, support and maintenance of said Elizabeth ; and after the said Quincy's death the whole property is bequeathed to Elizabeth, absolutely to her and her heirs,

to hold the same without the intervention of a trustee; and Quincy A. Morsell is appointed sole executor.

The paper writing under consideration is not signed by Miss Morsell, nor are the blanks filled up; and though there is an attestation clause, no witness signed it. She never saw it, but it was found in the possession of Mr. Williams the attorney who prepared it, and produced by him after the death of Miss Morsell.

We are therefore left to determine, from the evidence presented in the record, whether a paper thus offered for probate is sufficient in law to convey personal property as contended for by the appellee.

Mr. Williams, who prepared the paper, testifies that in the summer of 1862 he was called on by Mr. Quincy A. Morsell to prepare a will for his sister, Miss Eliza Morsell, leaving all of her property to her brother, the said Quincy, during his life, in trust for his child Betty, and appointing him executor.

Miss Lizzy Gamber testified that she resided in the house with Miss Eliza Morsell from June, 1863, to the 5th of January, 1864, when she died. That about twelve days before her death Miss Morsell told witness that Mr. Henry Williams had prepared a will for her, but it had not been signed, and she was prevented by paralysis from executing it, and it was afterwards lost. That she at one time had a will prepared leaving all her property to her niece, Betty Morsell, child of her brother Quincy.

Mr. Williams further testified that about four weeks before the death of Miss Morsell, Quincy A. Morsell gave him instructions to prepare a will similar to the first, which he did in about a week after receiving instructions. That he had not retained a copy of the first will, and prepared the second from two forms which he used in the preparation of the first, and that the second will, although not identical in language, was in effect the same. That

he never had any conversation with the said Eliza on the subject of making her will, and never received any instructions directly from her, and does not think he ever saw her after receiving instructions from Quincy Morsell. After the second instructions were given he was not called on for the will which he had prepared, and received no message about it. That the paper filed in this cause, marked A, is the paper that he prepared according to the instructions received from Quincy A. Morsell the second time.

Miss Gamber further testified that Miss Morsell said she had instructed her brother Quincy to get Mr. Williams to prepare a second will like the first; that this conversation took place a week before her death; that it was in the spring of 1863 she discovered that the will which had been prepared by Mr. Williams was lost; that she approved of the first will which was lost; that about a week before she died she told the witness she had read the first will and approved of it. During her last illness she made no allusion to any will, and witness never heard deceased speak of having any executed will in existence; that Miss Morsell's last illness continued from the Thursday on which she was taken sick until the following Tuesday week, on which latter day she died; that witness was with her during the time of her last illness, and never heard her send for the will which Mr. Williams was to prepare, nor did she make any effort to get it.

There is nothing in the evidence in this case to show that Miss Morsell intended that the paper should operate in its unfinished and imperfect state as her will. She did not write it; it was not in her possession at any time; she neither read it nor heard it read, and there is no evidence that she approved or adopted it; nor was she prevented from executing it by any casualty which the law denomi-

nates an act of God. She had full time after the paper was prepared for her to obtain and execute it. Her failure to do so leaves the Court in doubt as to her intentions. We are certainly not satisfied from this state of the proof that the *animus testandi*, which she manifested at one time, continued with her to the time of her decease or during her testamentary capacity after the preparation of the paper.

The general principles must govern in such cases. They are clearly stated (as deduced from all the cases) by Justices MARTIN and BUCHANAN, in *Tilghman vs. Stewart*, 4 *H. & J.*, 166, 167, 173, 174 *and* 176; and fully recognized and adopted in *Plater vs. Groome*, 3 *Md. Rep.*, 143; in *Boofter vs. Rogers*, 9 *Gill*, 53, 55, and in *Weems vs. Weems*, 19 *Md. Rep.*, 349, 350. In the last named case the instructions for the preparation of the will were given by the testator in the morning; the paper propounded as the will was drawn in accordance with the instructions given, and was executed by him on the evening of the same day. In the interval his testamentary capacity, which was proved to exist when the instructions were given, had left him before the hour of the execution of the paper. All this occurred on the same day, and in accordance with the like case of *Barnes vs. Crouch*, referred to in *Dorsey's Test. Law*, the will was allowed to take effect. The party was deprived of intellect in each of the cases before he could reasonably have had time to execute the paper after it had been prepared for the purpose. He was, therefore, prevented by the act of God from carrying out a testamentary purpose, for the formal execution of which the preparation had been made, but not in time to complete it. Entertaining the opinion that the decree of the Orphans' Court is erroneous, we will sign a decree of reversal, and remand the cause

for further proceedings.    The costs to be paid out of the estate.

*Decree reversed and cause remanded.*

